Chief Justice Bibb
delivered the Opinion of the Court.
William M’Elwee published his last will and testament, dated 17th June, 1810, which was proved and admitted to record in Lincoln county court, at their July term, 1810.
By the will, lie devises half his estate, after payment of his debts, to his wife Ann, (now the wife of Hammon,) for life, the other half to his unborn child, since born and named Martha Ann, but if the child should die without issue, then the estate, as well, that devised to the child, as that devised to the mother, to go to the children of his brother David M’Elwee. The will authorizes his executors to give such part of his tract of land on Yellow creek, (which lie supposes may be interfered with by other claims,) as they may deem sufficient to *411 such persons as they may think proper, for the purpose of adjusting and quieting the conflicting claims, such persons running all risques and paying all costs imqinieting said claims. “And my said executors are further empowered, to sell and dispose of said tract of land for the purpose of paying debts if necessary, or for the benefit of my said devisees.” Job Gresham and William»Findley, were appointed 'executors, but have never qualified.
Executors havins refus-committed^ by the conn- ' ty court to thcshenff-
Sheriff’s sale th,e Per_ e?ty. pr°p" -
Order of the “urt oTth^YeU low Creek • lauiis-
Sheriff’s saie> of the land t0 Smith-
orders of the, ?ourti allow-anii directing their payment.
*411 At October term, 1810, more than three months having elapsed from the death of the testator, and no person applying for administration, the county court of Lincoln, ordered the sheriff, William Pearl, to take the estate into his possession, and make sale of so much “as the payment of debts shall make necessary, or shall be perishable, or be directed to be sold by the will.”
In pursuance of this order the sheriff sold on the 21st November, and on the 22d December, 1810, personal property to the amount of £122 16 10 and on the 21st January, 1811, returned to the court an inventory ,of the sales, and of the bonds taken on the sales, which was ordered to record.
At December county court, 1810, the sheriff informed the court, that the personal estate would not he sufficient for payment of debts; thereupon, the court ordered the sheriff to make sale of the yellow creek tract of land in the will mentioned, at a credit-of nine months, to execute deed to the,purchaser to transfer the title, but without any warranty of title; the sale to be made at the court house door of Lincoln, by public auction, to be advertised at various places, specified by the order of court.
Under this order, Pearl sold the Yellow creek land at public auction, at the court house door, as required by the order, and William Smith became the purchaser at the price of §120; and on the 14th March, 1811, Pearl, as sheriff, acting under the order of court, made a deed to said Smith.
Between the time of committing the administration to the sheriff and July term, 1812, the county court ot lancoln, at various terms, made orders up *412 on the sheriff, to pay to certain persons the amount of their claims against the estate; subject to legal deduction in case of deficiency of assets.
Order for the sale of the Lincoln lands.
Bill by the devisee against the sheriff and Smith as purchaser of the lauds.
Answers of Pe?rl,; the sheriff and Smith. '
Decree of the circuit court.
At July term, 1812, the county court entered an order, stating that they were informed by the sheriff, that the personal estate was not sufficient to satisfy the debts, and required the sheriff forthwith to sell the tract of land in Lincoln", on which the test tator resided at the time of his death.
On the 20th August, 1812, Thorrfas Hammon, who had married the widow, and Martha Ann, the daughter of the testator, exhibited their bill against Pearl for an account of the estate, charging him with waste,-and against Smith the purchaser, charging collusion between him and Pearl; that the personal estate was sufficient to pay the debts; stating also, that Thomas Hammon applied to Pear 1, and requested him to sell the Yellow creek land, in Knox county, wherein it lay; they pray to set aside the sale made by Pearl; to enjoin him from selling the home tract; that Pearl may settle his account; and for general relief.
Pearl answered in February, 1813, exhibiting an inventory of the sales and of debts paid, and the various orders upon him, made by the county court, directing those debts to be paid; and his settlement with the county court, in January, 1 SI3, returned by,the commissioners appointed to settle with him, which the court received and ordered to be recorded, by which abalance of"$65 is reported in favor of Pearl. Smith and Péari both deny any fraud or collusion in the sale.
Üpon hearing, the court dismissed the bill as to Smith, but as to Pearl, they decreed against him for the yellow creek land, the sum of two thousand dollars, with interest from the 4th of March, 1811, (the day of sale,) to the time of the decree; also $iG0 assessed by the jury for personal estate remaining in his hands,' to be credited by $45, allowed Pearl for commissions'on the moneys paid out by him; that $120, received by Pearl of Smith, be retained by Pearl, and that he be discharged therefor *413 from tbe suit of the complainants, with perpetual injunction against selling the home tract of land.
Interlocutory orders, fixing certain principles and or-' dering a jury to be empan-nelled.
Matters of account in equity shall not be refer, ed to a jury to be fo'und on evidence not appearing in record.
Appeals in equity cases are upon the facts, as wel as upon the law, and the proofs must appear in the record, except the pa-roi proof of exhibits.
Claim a-gamst Adams relied on as a charge against the sheriff, disa! lowed.
Before the jury was impannelled, an interlocutory decree had been pronounced, charging Pearl as responsible for the value of the Yellow creek land, at the time of the sale to Smith, with interest from that time; also directing Pearl to be charged with £122 16 10, the amount of sales of the personal estate, with £28.0 7, admitted in his answer, as omitteth in his settlement with the county court; also with tire sum of ‡ 184, due from the executor of Thomas Adams, subject to the credits for all sums paid under the orders of the Lincoln county court, and for all sums appearing in the cause which he can shofwhe was legally bound to pay, and for his commission on the sums paid. The several sums to be ascertained, of value of land, and the credits aforesaid, by the verdict of the jury thereby ordered; all legal evidence, written or parol, as well for plaintiffs as defendants, to be used before the jury.
This course of referring matters of account in equity, to a jury to be decided upon proof not appearing in the cause, and therefore, not subject to the revision of the appellate tribunal, cannot be approved.
The evidence to sustain a decree must appear; the appeal in equity cases is upon matters of fact, as well as matters of equity founded on the facts, in general, parol proof is. not admissible in our courts of equity, unless it be merely to prove an exhibit or such like. We must take such facts as true, and those only which are sustained by the proofs and exhibits sent up on appeal.
The account of $184, charged by the decree against Pearl the sheriff, is thus made up: At January term of the Lincoln county court, an order was made, upon the motion of Thomas Hammon, sug-gestingjjj that there were- open accounts existing be-tweeii the estate of William M’Elwee, deceased, and Thomas Adams, deceased, “it is ordered that John Wilkinson, Achilles Perrin, James I. Waltingham and William Pearl, or any three of them be appoint- *414 eel commissioners, who are .hereby requested to Set-tie arid adjust the said accounts with John James, executor of the said Thomas Adams, and make report of their proceedings to this court.” Under this order the commissioners made a report of the 4th April, 1812, of vouchers, as they are called in packets No. 1, 2 and 3; by which it is supposed that a bataneéis found in favor of the estate of William M’Elwee, of $184. Whether the commissioners did intend to report such a balance due, or not due, or only that negro Harry is the property of Thomas Adams, deceased, is not very clear. The document is a curious medley, and suited to the extraordinary jurisdiction assumed by the order of the county court to which it responds. It cannot be admitted that this document can be the foundation of a just charge against the sheriff. Thomas Haminon procured the order of court; but it does- not appear that the executor of Adams has participated in the settlement, or has acknowledged any such balance; there is nothing in the report, or vouchers as they are called, upon which thé sheriff could maintain an action against the executor of Adams; no evi-r dence is adduced conducing to show that Adams was so indebted to M’Elwee; nor any color of evidence, that such sum or any part of it was ever received by the sheriff Pearl. This claim is'not alluded to' in the bill or answer, but has crept in, without any color of evidence to fix the amount as of right to be accounted for by the sheriff.
Held, on tho evidence, the sale of the land by the sheriff was fair, and he was, therefore, charga-ble with only the price obtained.
There is no evidence to justify the charging the sheriff with the value assessed for the Yellow creek land. The sale was advertised fairly by the sheriff, and sold at the place appointed by the county court. The sheriff was not at liberty to have sold it in Knox, as requested by the complainant Thomas. Many bidders were present, every opportunity was given to bidders to come in. Smith was the best bidder; no body would give more for a disputed claim in adverse possession of other conflicting claimants. M’Elwee’s claim was then thought invalid and worthless, and the assessment by the jury and the court has been made for the value of the land, as if M’Elwee’s title was clear and undisput *415 ed. There is no sufficient ground made out for charging the sheriff with collusion or unfair practice in the sale, nor for holding him responsible beyond the price he received from the purchaser.
Where the executor refuses to qualify and no one will administer, the ' estate is committed to the sheriff, who acts as the agent of the court who allow the claims and direct the sales, apportion the assets, and order the payments.
Where the direct lands to he sold to pay debts, the court may order the sale.
*415 By the 57th section of the act concerning executors and administrators, (1 Digest, 533,) the county court had jurisdiction to commit the estate to the sheriff to be managed under their control. The sheriff acts in such cases, under the direction and control of the court. The sheriff in this case acted in obedience to the orders of the court. The land was sold expressly by order of the court; the debts were paid by their order upon proof before them; there was not sufficient, without sale of the Yellow creek and to pay all. Instead of applying to the county court to compel the sheriff to a settlement according to the powers given to that court, and for distribution according to the mode pointed out; the sheriff being responsible to that court, as well for payment of debts, as for paying over the surplus, by assigning the bonds, or estate unsold, in case of surplus, after charges paid, and his commissions as nip on estate taken in execution, the complainants have in the first instance, come into chancery, without any evidence of fraud or mal-feazance in (he sheriff. The act which confers the jurisdiction on the county court, in cases where no executor qualifies, and no administration is applied for, to commit the estate to the sheriff, is peculiar; imposes a duty on the sheriff, very different from the administration to be made by executors and administrators; the county court is rather the executor or administrator, and the sheriff their agent; they are to.Jiear the’"'claims, direct the payments, apportion the assets without regard to the dignity of the debts; and order the surplus, if any, to the legatees or next of kin. The sheriff acts, not as executor or administrator, but under the orders of the county court, as sheriff, andas the officer of the-court.
The county court had the power to order the sheriff to make sale of so much of the estate, “by public auction, as the payment of debts shall make *416 necessary, or as shall be perishable, or be directed by will.” In making the order for sale of the yellow creek tract of land, directed by the will to be sold, for payment of debts, or for tha benefit of the devisees and legatees, the county court acted within the pale of their authority and jurisdiction.
Errors in the accounts remarked upon.
Legatees of deceased entitled to demand of the sheriff only the surplus, after payment of creditors.
J udge Mills held the dis-tributees or legatees may call the eher-iff to account in the court of chancery, and demand distribution without first requiring a settlement in the county court.
*416 In the settlement, however, with the commissioners appointed by the county court, the answer admits that the commissioners omitted to charge him with £28 0 7, from money received from debts due M’Elwée at his death, and so he is charged by the decree. But this is a mistake the answer, he is charged with the amount of sales, £122 16 30, and with an additional sum of £28 1 2, (instead of £28 0 7,) making the sum charged against him five hundred and three dollars. The omitted charge is the sum of $120, received from the sale of the yellow creek land; the commissioners omitted to credit the sheriff with his commissions expressly allowed him by the statute, as on sales under executions; thus a balance in favor of Ithe sheriff of $65 was produced. There are debts * liquidated by the country court yet unpaid, as appears by the orders made by the country court in favor of the creditors, compared with the receipts and settlement with the sheriff, some of those creditors, having received partial payments, and some no part of their demands. Therefore, it cannot be seen without farther statement and settlement of the accounts, whether there is a surplus in the hands of the sheriff belonging to the legatees.
The complainants can be entitled only to the surplus after payment of debts. .They exlffbited .their bill before any attempt to call the sheriff to a settlement before the county court; and before any call upon the sheriff by the court to settle the accounts, The settlement by the sheriff was subsequent to the bill.
This- application to the circuit court for an account and settlement, before# any attempt to bring .about a settlement beforb the county court, is deemed by Judge Mills not premature; and that the jurisdiction given by the statute to the county court, *417 to settle the account and order the surplus, if any, to be paid by the sheriff, to the legatees or next of kin, does not direst the courts of equity of their general jurisdiction in cases of account and trust.
Chief Justice holds tho sheriff ought fo be first required to settle in the county court, and equity ought not to entertain the application then first made, without special cause.
Mistake having been committed in the settlement with the county court after the bill filed, the jurisdiction allowed, and a complete account ordered.
County court have no now-er to order the sheriff to whom the estate of a decedent, of which none •would administer, has been committed, to sell lands not directed by the will to be sold, but the court may order lands to be sold according to the will.
*417 The Chief Justice is of ¡opinion, that considering the peculiar jurisdiction coufereil by statute on the county courts, to commit the estate to the sheriff, because no one applies for administration, to Order the debts to be paid, control the sheriff, settle the accounts, and order the surplus, if any, to the legatees or next of kin, no suit ought to he sustained by a court of equity against the sheriff, but to review and correct a settlement, made by the county court with the sheriff, for fraud of the sheriff, or mistake, or to compel ¿settlement, where the powers of the county court have been resorted to, and have been found insufficient or defective; that the jurisdiction given to the county court being explicit, not only to settle the accounts of the sheriff, but also to order the payment of the surplus, if any, to the legatees or next of kin, according to law, this cheap and expeditious mode of settlement ought hot to be departed from iii such cases, unless the complainant assigns some sufficient cause for failing to apply to the county court, or comes into equity to surcharge and falsify the accounts of the sheriff; that a court of equity ought not to indulge a capricious and vexatious application prematurely made to a court of equity, by a legatee or distributee, who would nq|, take the administration of the estate.
However, as it does appear by the answer and exhibits in the cause, that a mistake was committed in •the settlement made with the county court, after bill filed, the judges concur in ordering an account to be taken, to ascertain if there be a surplus after payment of debts. Having received assets, the sheriff is bound to apply them to the debts liquidated by the county court, as there is no attempt to overhall or impugn such liquidation.
It seems to this court, that the order of the county court, for the sale of the tract of land, not directed by the will to be sold, was without authori *418 ty of lafv, and without jurisdiction of the county court, so to order; and as to that, the injunction should be perpetuated; but this court is further of opinion, that in so far as the bill seeks to impeach, or set aside the sale made by the sheriff, of the land on Yellow creek, there'is no just cause of complaint; that the county court acted in that behalf within the pale of their jurisdiction, that the sheriff has conducted the sale without fraud, or collusion, that the purchaser, Smith, acquired a right thereby to M’Elwee’s patent; the bill as to that subject should have been dismissed.
Decision on items of the ■account.
Decree and mandate for a further account of matters not apparent in the record and for distribution of the surplus.
Bond to be required of legatees.
And this court is further of opinion, that, the defendant, Pearl, is not chargeable with the sum of $184, in the decree mentioned; nor to be twice charged with the sum of £28 0 7; but that the settlement made by the sheriff with the commissioners, is incomplete; he is not charged with the sum of 0120, received upon the sale of the Yellow creek lands, nor credited by the commissions allowed him by the statute.
Therefore, it is ordered and decreed, that the decree of the circuit court in dismissing the bill as to Smith, be affirmed, and the decree as to Pearl, be reversed, and that the cause be remanded, with directions to cause an account to be taken, to ascertain whether a surplus remains in the hands of the sheriff, after paying the debts of the testator, M’El-wee, as ordered and directed by the county court; in this account the sheriff is to be charged with the sums' of £122 16 10, £28 0 7 and $120, from which the debts of the testator, as settled and ordered to be paid by the county court, and all other just allowances to the sheriff; are to be deducted; and if a surplus appears, then that such surplus be decreed to be paid over to the complainants, on their giving bond and security, to refund their just proportions of such surplus, in case any debts not so taken into account, shall hereafter appear; and for such other and further proceedings, not inconsistent with the foregoing opinion as the principles and usages of equity may require.
*419 Judge Owsley absent.
Turner, Denny and Monroe, for M’Elwee’s heirs; Robertson and Triplett, for Smith and Pearl.
1[he complainants below, Hammon, &c. to pay tbe costs in this court, in both cases.